# In the United States Court of Federal Claims

<table>
<tr><td>

PTA-FLA, INC.,

        Plaintiff,

        v.

THE UNITED STATES,

        Defendant.

</td><td>

No. 25-cv-988

Filed: July 22, 2026

</td></tr>
</table>

*James U. Troup* of Fletcher, Heald & Hildreth, Arlington, VA, appeared for Plaintiff. With him on the briefs was *Tony S. Lee* of Fletcher, Heald & Hildreth, Arlington, VA.

*A. Bondurant Eley* of the United States Department of Justice, Civil Division, Washington, D.C., appeared for Defendant. With her on the briefs were *Eric P. Bruskin, Patricia M. McCarthy* and *Brett A. Shumate*, of the United States Department of Justice, Civil Division, Washington, D.C.

### MEMORANDUM AND ORDER

Congress created the Secure and Trusted Communications Networks Reimbursement Program, 47 U.S.C. § 1603 (Reimbursement Program), to offer "reimbursements to providers of advanced communications service to replace" certain foreign-made telecommunications equipment that "poses an unacceptable risk to the national security risk of the United States." *Id.* §§ 1601(b)(1), 1603(a). The Federal Communications Commission (FCC or Commission) has the power to administer the Reimbursement Program under the Secure and Trusted Networks Act of 2019, Pub. L. No. 116-124, 134 Stat. 158 (2020) (codified at 47 U.S.C. § 1601 *et seq.*) (Secure Networks Act). Congress directed the FCC to distribute public funds from the Reimbursement Program only to applicants who meet certain eligibility criteria. 47 U.S.C. § 1603(b). Among

other requirements, a company can only receive funding if it "provides advanced communications service to United States customers." *Id.* § 1608(10)(A).

Plaintiff PTA-FLA, Inc. (PTA-FLA or Plaintiff) does not provide service to any customers, nor has it provided service for many years; however, PTA-FLA still requested $273,971,425.71 in federal funds from the Reimbursement Program. *See* ECF No. 6 (Corrected Motion to Dismiss or Motion) at 55 (Def. App.[1] at A16); ECF No. 6 (Am. Compl.) ¶ 40.    At its core, PTA-FLA's application was a request to spend $273,971,425.71 in public funds to upgrade an inactive telecommunications network.   Am. Compl. ¶ 47.   The FCC rejected PTA-FLA's application through a comprehensive regulatory review process.   The FCC delegated authority to review applications to the Wireline Competition Bureau, which on July 15, 2022, rejected Plaintiff's application for funding.   Am. Compl. 44; ECF No. 10 (Corrected Motion to Dismiss or Motion) at 41 (Def. App. at A2 nn. 3, 4).   Specifically, the Wireline Competition Bureau found that Plaintiff was ineligible for the Reimbursement Program because Plaintiff had not provided telecommunications services for several years.   Mot. at 44 (Def. App. at A5).   On February 15, 2024, Plaintiff appealed that denial to the full Commission, which has yet to rule upon Plaintiff's appeal.   *Id.* at 63 (Def. App. at A24).

As detailed further below, Federal law dictates that Plaintiff may only seek judicial review after the full Commission rules upon Plaintiff's appeal, and then Plaintiff may only seek judicial review in a United States court of appeals.   47 U.S.C. § 402(a); *Sandwich Isles Commc'ns, Inc. v. United States*, 992 F.3d 1355, 1363 (Fed. Cir. 2021).   Instead of waiting for the full Commission

---

[1] Defendant failed to attach its appendix as an exhibit to its Motion.  Rather, the appendix is included as part of the Motion, with the same ECF citation as the Motion.  For clarity about what is in the appendix (as opposed to attorney argument in the Motion), this Memorandum and Order references the page number citation in the Motion and indicates the numbering within the appendix.

to rule and then seeking judicial review in a court of appeals, PTA-FLA sued in this Court and raises two counts challenging the Wireline Competition Bureau's denial of the funding.  Am. Compl.  In Count One, Plaintiff claims that it has an entitlement to payment under the Reimbursement Program, which it asserts it can collect through an action in this Court. Am. Compl. ¶¶ 55–67.  In Count Two, Plaintiff claims that the Secure Networks Act, its enabling regulations, and the public statements of FCC officials together created an offer for a binding contract for reimbursement, which Plaintiff accepted and now seeks to enforce.  Am. Compl. ¶¶ 68–94.

Defendant, the United States, moves to dismiss on several grounds pursuant to Rules 12(b)(1) and 12(b)(6).  Mot. at 10.  First, Defendant argues that this Court lacks subject matter jurisdiction because Congress has displaced Tucker Act jurisdiction for the type of FCC order at issue here.  Second, Defendant argues that this Court lacks subject matter jurisdiction because Plaintiff did not satisfy administrative exhaustion requirements.  Third, Defendant argues that Plaintiff fails to state a claim for relief in each Count.  Defendant argues that Plaintiff fails to state a claim for relief in Count One because Plaintiff does not meet the requirements of the Reimbursement Program.  Defendant argues that Plaintiff fails to state a claim for relief in Count Two because Plaintiff does not allege a mutual intent to contract or unambiguous offer and acceptance between itself and the FCC.

The Court **GRANTS** Defendant's Corrected Motion to Dismiss (ECF No. 10) in full. Accordingly, Plaintiff's Amended Complaint (ECF No. 6) is **DISMISSED**.

**BACKGROUND**[2]

Plaintiff "provided advanced communications service to approximately 4,000 customers in Florida, West Tennessee, and South Carolina" using telecommunications devices that qualify for the Reimbursement Program. ECF No. 6 (Am. Compl.) ¶ 24. Plaintiff does not specify in its Amended Complaint the time period when it "provided" such a service, nor does Plaintiff allege in its Amended Complaint that it currently provides telecommunications services or that it provided such services at the time that it applied for FCC funding. *See id.*

On March 12, 2020, President Trump signed into law the Secure Networks Act, which included the Reimbursement Program. *See* Secure Networks Act § 4. Plaintiff alleges that, subsequently, the FCC "made an offer to Plaintiff" related to reimbursement of expenses for replacing Huawei and ZTE network equipment, which allegedly was sufficient to form a contract with Plaintiff. Am. Compl. ¶ 31. In particular, Plaintiff alleges that "[i]n early 2020 and 2021, the FCC and its leadership publicly urged providers to begin the removal process without delay, highlighting the urgent national security concerns posed by covered equipment." Am. Compl. ¶ 32. According to Plaintiff, FCC officials "praised providers that removed the Huawei and ZTE

---

[2] At this motion to dismiss stage, the Court does not make factual findings; rather, the Court accepts the well-pleaded facts in the Complaint as true for purposes of resolving a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Boyd v. United States*, 134 F.4th 1348, 1352 (Fed. Cir. 2025) ("We take all factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party." (quoting *Jones v. United States*, 846 F.3d 1343, 1351 (Fed. Cir. 2017))). As Defendant has not challenged any factual allegations in the Complaint, the Court also accepts as true all well-pleaded facts for purposes of the resolving the Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) ("In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." (citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993))).

equipment from their networks prior to the establishment of the Reimbursement Program and assured them they would receive reimbursement." *Id.* ¶ 33.

Plaintiff asserts that FCC officials promised during a September 27, 2021 webinar that "providers who acted in good faith to begin the removal and replacement process prior to the reimbursement application window would not be penalized and could still qualify for funding." *Id.* ¶ 34. Plaintiff claims that "FCC staff emphasized that reimbursement eligibility could include expenses incurred before the program formally launched, so long as the provider met the other statutory criteria." *Id.* Plaintiff alleges that a then-Special Counsel to the FCC Chairman stated "[m]ake no mistake, the time is now to remove this equipment from our networks." *Id.* ¶ 35. Plaintiff alleges that these FCC statements during the webinar "made clear that the United States not only supported—but expected—early action." *Id.*

Plaintiff contends that "[b]y January[] 2022," it "dismantled its network and removed substantially all of the Huawei and ZTE equipment in advance of final establishment of the Reimbursement Program, incurring substantial expenses." *Id.* ¶ 36. Plaintiff alleges that it undertook such action based on "good faith reliance on the United States's representations and directives." *Id.* ¶ 37. Plaintiff does not allege that it purchased any replacement equipment, but instead states that it "wait[ed] until the opening of the application window for the Replacement Program to restore its network with replacement equipment." *See id.* Plaintiff alleges that the costs incurred in dismantling the network and removing equipment constitute consideration for a contract. *Id.* ¶ 41 ("Plaintiff's reliance was justified by the specific purpose and policy goals of the Secure Networks Act, the rules and orders governing the Reimbursement Program, and the express representations by the United States's agent, the FCC."). Additionally, Plaintiff asserts that it engaged in forbearance, sufficient to constitute consideration, during this time, as Plaintiff

5

allegedly forbore "from restoring the operation of its network by re-installing the Huawei and ZTE equipment by purchasing, renting, or leasing such equipment." *Id.* ¶ 42.

On January 23, 2022, Plaintiff signed FCC Form 5640, through which Plaintiff applied for reimbursement under the Reimbursement Program and certified that it would abide by the Program's terms. *Id.* ¶ 38. Plaintiff characterizes its signature of Form 5640 as acceptance of a contractual offer from the FCC. *Id.* Plaintiff claims that at the time that it signed Form 5640, it satisfied the eligibility requirements for the Reimbursement Program, including "the customer-size threshold, the lawful acquisition of covered equipment prior to June 30, 2020, and the submission of detailed cost estimates approved in the FCC's catalog of approved costs." *Id.* ¶ 39. In submitting Form 5640 to the FCC, Plaintiff also contends that it applied for the Reimbursement Program. *Id.* ¶ 38. Plaintiff alleges that it is owed $273,971,425.71 under its application. *Id.* ¶ 66.

On July 15, 2022, the FCC denied Plaintiff's application for reimbursement based upon what Plaintiff characterizes as "an erroneous interpretation of the term 'provider' in the Secure Networks Act." *Id.* ¶ 44. Plaintiff states that it "had only temporarily taken its network offline in the past, not as a permanent cessation of service." *Id.* ¶ 47. Plaintiff further alleges that it has continued to pay for tower leases and maintain other infrastructure since deactivating its network. *Id.* Plaintiff also contends that it could have "promptly" restarted operations if it received payment from the Reimbursement Program. *Id.*

On August 15, 2022, Plaintiff filed a Petition for Reconsideration with the FCC Wireline Competition Bureau. Mot. at 41 (Def. App. at A2) (Order on Reconsideration). On January 16, 2024, the Wireline Competition Bureau denied Plaintiff's Petition for Reconsideration: it determined that Plaintiff did not qualify for the Reimbursement Program because Plaintiff "had ceased network operations in 2014." *Id.* at 41–43 (Def. App. at A2–A4). Plaintiff alleges that this

6

decision "precluded Plaintiff from resubmitting its application or submitting a new application for a reimbursement following the FCC's denial of Plaintiff's original application." Am. Compl. ¶ 50.

On February 15, 2024, Plaintiff filed an Application for Review of the Wireline Competition Bureau's decision to the full Commission. Mot. at 67–82 (Def. App. at A28–43) (Application for Review). At the time Defendant filed its Corrected Motion to Dismiss, the FCC had not yet acted upon Plaintiff's Application for Review. Mot. at 16.[3]

## **PROCEDURAL HISTORY**

On June 12, 2025, Plaintiff filed its Complaint and on July 3, 2025, Plaintiff filed its First Amended Complaint, which remains the operative complaint in this case. ECF No. 1; Am. Compl.

On August 18, 2025, Defendant filed its Motion to Dismiss. ECF No. 8. On August 29, 2025, the Court granted leave for Defendant to file a Corrected Motion to Dismiss in order to fix pagination errors in Defendant's previously-filed Motion to Dismiss. *See* ECF No. 9; Minute Order dated Aug. 29, 2025. On August 29, 2025, Defendant filed its Corrected Motion to Dismiss, which is the motion that is currently before the Court. ECF No. 10 (Motion).

On February 25, 2026, after the conclusion of briefing on the Corrected Motion to Dismiss,[4] Plaintiff filed a Motion for Leave to File Notice of Supplemental Authority. ECF No. 20. Plaintiff sought to discuss four district court cases interpreting *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025), all of which were published after Plaintiff had filed its Response to Defendant's Corrected Motion to Dismiss. *Id.* at 1. The Court granted

---

[3] During the March 12, 2026, oral argument, Defendant confirmed that the full Commission had not yet ruled upon the Application for Review. ECF No. 26 (Oral Argument Transcript or OA Tr.) at 6:9.

[4] *See* Plaintiff's Response in Opposition to the Corrected Motion to Dismiss (ECF No. 13) (Response); Defendant's Reply in support of the Corrected Motion to Dismiss (ECF No. 19) (Reply).

the Motion for Leave to File Notice of Supplemental Authority on the same date. *See* ECF No. 20; Minute Order dated Feb. 25, 2026. On February 26, 2026, Plaintiff filed its Notice of Supplemental Authority. ECF No. 21 (Plaintiff's Notice of Supplemental Authority). On March 4, 2026, Defendant filed its Response to Plaintiff's Notice of Supplemental Authority. ECF No. 22 (Defendant's Response to Plaintiff's Notice of Supplemental Authority).

Subsequently, on March 12, 2026, the Court conducted oral argument. Minute Entry dated Mar. 12, 2026. At oral argument, Plaintiff cited a newly-issued decision from the United States Court of Appeals for the Federal Circuit (Federal Circuit), *Ligado Networks LLC v. United States*, No. 25-1792, 2026 WL 653982 (Fed. Cir. Mar. 9, 2026). OA Tr. at 11:10–17. The Court ordered the parties to file supplemental briefs concerning the impact of *Ligado Networks*, if any, on this action and the pending Motion. ECF No. 23 at 1. On March 27, 2026, each party filed a supplemental brief concerning the impact of *Ligado Networks*. ECF Nos. 24 (Defendant's Supplemental Brief), 27 (Plaintiff's Supplemental Brief).

After oral argument, Defendant filed a Motion for Leave to Submit Notice of Supplemental Authority, concerning the decision from the Court of Federal Claims in *SI Wireless, LLC v. United States*, 181 Fed. Cl. 200 (2026). ECF No. 28 at 1. On May 14, 2026, the Court granted Defendant leave to file the Notice of Supplemental Authority and ordered Plaintiff to file a response brief. *See* ECF No. 28; Minute Order dated May 14, 2026. On the same day, Defendant filed its Notice of Supplemental Authority. ECF No. 29 (Defendant's Notice of Supplemental Authority). On May 18, 2026, Plaintiff filed its Response to Defendant's Notice of Supplemental Authority. ECF No. 30 (Plaintiff's Response to Notice of Supplemental Authority). The Corrected Motion to Dismiss is now fully briefed and ripe for review.

8

## STATUTORY FRAMEWORK

Congress created the FCC in the Communications Act of 1934. *See* Communications Act of 1934, 47 U.S.C. § 151 *et seq.*; *see also* 47 U.S.C. § 151 ("[T]here is created a commission to be known as the 'Federal Communications Commission.'"). Petitioners may seek judicial review of FCC decisions through an appeal to either the United States Court of Appeals for the District of Columbia Circuit (D.C. Circuit) or a regional court of appeals, depending on the type of FCC decision. *See* 47 U.S.C. § 402; *see also Sandwich Isles Commc'ns., Inc. v. United States*, 992 F.3d 1355, 1362 (Fed. Cir. 2021) ("The Communications Act specifically provides for judicial review of FCC decisions in 47 U.S.C. § 402."); *Folden v. United States*, 379 F.3d 1344, 1356 (Fed. Cir. 2004) ("[S]ubsections 402(a) and (b) comprise the entire statutory regime by which parties may obtain judicial review of Commission decisions."). Certain FCC decisions must be appealed to the D.C. Circuit. *See* 47 U.S.C. § 402(b) (Section 402(b)) (listing decisions that can only be appealed to the D.C. Circuit). All other FCC decisions can be appealed to either the D.C. Circuit or a regional court of appeals—a group that does not include this Court's reviewing body, the United States Court of Appeals for the Federal Circuit. *See* 47 U.S.C. § 402(a) (Section 402(a)) ("Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of title 28."); 28 U.S.C. ch. 158, § 2342(1) ("The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communication Commission made reviewable by section 402(a) of title 47.").

The Secure Networks Act became law on March 12, 2020.  *See* Secure Networks Act.  The Secure Networks Act required the FCC to publish a list of communications equipment for which the producer or provider "poses an unacceptable risk to the national security of the United States or the security and safety of United States persons."  47 U.S.C. § 1601(a), (b)(1).  As part of the Secure Networks Act, Congress ordered the FCC to create the Reimbursement Program, which would reimburse "providers of advanced communications service" for the cost to replace the equipment the FCC included on the list.  *Id.* § 1603(a).  The Secure Networks Act also set eligibility rules for the Reimbursement Program and created guidelines for how the FCC must implement the Reimbursement Program.  *Id.* § 1603(b), (d).  Specifically, the FCC was required to undertake a rulemaking process to implement the Reimbursement Program.  *Id.* § 1603(g).  The Secure Networks Act also mandates that the FCC has the same enforcement powers and jurisdiction over the Secure Networks Act as over any part of the Communications Act of 1934:

> A violation of this chapter or a regulation promulgated under this chapter shall be treated as a violation of the Communications Act of 1934 (47 U.S.C. 151 et seq.) or a regulation promulgated under such Act, respectively. The Commission shall enforce this chapter and the regulations promulgated under this chapter in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the Communications Act of 1934 were incorporated into and made a part of this chapter.

47 U.S.C. § 1606(a).

## LEGAL STANDARD

### I.    Rule 12(b)(1)

This Court must dismiss claims outside its subject matter jurisdiction.  Rules 12(b)(1), 12(h)(3); *St. Bernard Par. Gov't v. United States*, 916 F.3d 987, 992 (Fed. Cir. 2019) ("It is well settled that limitations on subject matter jurisdiction are not waivable . . . .").  As Defendant has not challenged any factual allegations in the Complaint, the Court also accepts as true all well-

10

pleaded facts for purposes of the resolving the Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) ("In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." (citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993))); *see also Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014). The Court "is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings" to determine subject matter jurisdiction. *Cedars-Sinai*, 11 F.3d at 1584; *see 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1378 (Fed. Cir. 2012).

## II.     Rule 12(b)(6)

To withstand a motion to dismiss pursuant to 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff also must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (second alteration in original) (internal citations omitted). "The Court of Federal Claims may properly grant a motion to dismiss under [Rule] 12(b)(6) when a complaint does not allege facts that show the plaintiff is entitled to the legal remedy sought." *Steffen v. United States*, 995 F.3d 1377, 1379 (Fed. Cir. 2021) (citing *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)).

11

At the motion to dismiss stage, this Court must "take all factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party." *Boyd v. United States*, 134 F.4th 1348, 1352 (Fed. Cir. 2025) (quoting *Jones v. United States*, 846 F.3d 1343, 1351 (Fed. Cir. 2017)). The Court, however, need not "accept the asserted legal conclusions." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019) (citing *Ashcroft*, 556 U.S. at 678). The Court "must consider the complaint in its entirety" as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court may rely on exhibits attached to the complaint, as these "are not 'matters outside the pleadings.'" *Sharifi v. United States*, 987 F.3d 1063, 1067 (Fed. Cir. 2021) (quoting Rule 12(d)); *see also AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 34 (Fed. Cir. 2024) ("Review of a motion to dismiss under Rule 12(b)(6) is generally limited 'to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'" (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." *Allen Eng'g Contractor, Inc. v. United States*, 115 Fed. Cl. 457, 464 (2014), *aff'd*, 611 F. App'x 701 (quoting *Fayetteville Invs. v. Comm. Builders*, 936 F.2d 1462, 1465 (4th Cir. 1991)); 5A *Wright & Miller's Federal Practice and Procedure* § 1327 (3d ed. 2004 & Suppl. 2016) (explaining that the Court "obviously is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions"); *see also Rocky Mountain Helium, LLC v. United States*, 841 F.3d 1320, 1326 (Fed. Cir. 2016) (favorably quoting Wright & Miller § 1327).

**DISCUSSION**

The Discussion proceeds in three parts, corresponding to the three lines of argument raised by the Motion.  As explained further below, this Court lacks jurisdiction over Plaintiff's Amended Complaint, and, even if jurisdiction existed, this Court would still be required to dismiss Plaintiff's Amended Complaint because it fails to state a plausible claim for relief.

*First*, the Court lacks Tucker Act jurisdiction over the entirety of this suit.  Defendant argues that the comprehensive regulatory system and judicial review provisions for FCC decisions displaces Tucker Act jurisdiction.  As discussed further below, although the Tucker Act generally provides this Court with jurisdiction over money-mandating claims, Congress withdraws that jurisdiction where, as here, there is a comprehensive scheme of judicial review over administrative decisions.  Here, Congress has provided specific authorities for FCC review of Reimbursement Program applications and judicial review provisions for FCC decisions, which remove cases concerning such applications from this Court's jurisdiction.  Plaintiff cannot side-step this jurisdictional defect by attempting to recharacterize its appeal of an FCC decision as a contract claim.

*Second*, this Court also lacks jurisdiction over the entirety of this suit because Plaintiff failed to exhaust its mandatory administrative remedies.  FCC regulations require Plaintiff to wait for a decision on its appeal to the full Commission before seeking judicial review, and Plaintiff failed to do so in this case.

*Third*, even if the Court had jurisdiction over Plaintiff's claims, each Count would fail to state a claim as a matter of law.  Plaintiff fails to state a claim for relief in Count One because, according to the facts pleaded in the Amended Complaint, Plaintiff was not eligible for the Reimbursement Program as a matter of law.  Plaintiff did not operate a telecommunications

13

network when it applied to the Reimbursement Program, but the Reimbursement Program required that grant recipients operate an active network.  Plaintiff fails to state a claim for relief in Count Two because the facts in its Amended Complaint do not plausibly plead a contract with the United States.  The United States never made an offer to enter into a contract with Plaintiff.

### I.    Tucker Act Jurisdiction

Defendant argues that this Court lacks subject matter jurisdiction over the entire Amended Complaint because Congress has displaced the Court of Federal Claims' Tucker Act jurisdiction over appeals from FCC decisions.  Mot. at 19.  In support of its position, Defendant makes several arguments.  First, Defendant relies upon the Federal Circuit's decision *Sandwich Isles Commc'ns, Inc. v. United States*, 992 F.3d 1355, 1363 (Fed. Cir. 2021), for the contention that "the Communications Act's comprehensive scheme for review displaces Tucker Act jurisdiction for FCC orders and decisions falling within 47 U.S.C. § 402(a)."  Mot. at 20–21; *see* 47 U.S.C. § 402(a) (limiting jurisdiction to the courts of appeals over "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the [FCC] under [Chapter 5 of Title 47 of the United States Code]").  Defendant argues that FCC decisions under the Secure Networks Act, including the denial of the Reimbursement Program application that Plaintiff challenges, are subject to the Section 402(a) jurisdictional provision.  Mot. at 21.  The Secure Networks Act directs that it should be interpreted "as though all applicable terms and provisions of the Communications Act of 1934 were incorporated into and made a part of this chapter."  47 U.S.C. § 1606(a) (Section 1606).  Defendant asserts that Count One of the Amended Complaint must be dismissed because it explicitly seeks review of an FCC decision that has been displaced from Tucker Act jurisdiction.  Mot. at 21–22.  Second, Defendant contends that Count Two of Plaintiff's Amended Complaint must be dismissed for a similar lack of jurisdiction, even though Plaintiff alleges a contract with the FCC, because

14

the "true nature" of the claim remains an appeal of an FCC order. *Id.* at 22 (quoting *Sandwich Isles*, 992 F.3d at 1364).

Plaintiff disputes Defendant's argument that Section 402(a) displaces Tucker Act jurisdiction over this case.[5]  Resp. at 23.  Plaintiff argues that there must be "unambiguous congressional intent to displace the Tucker Act's waiver of sovereign immunity." *Id.* (quoting *Acceptance Ins. Cos. Inc. v. United States*, 503 F.3d 1328, 1336 (Fed. Cir. 2007)).  Plaintiff also argues that a recent Supreme Court case limited the set of cases exclusively granted to the courts of appeals.  *Id.* at 28 (citing *McLaughlin*, 606 U.S. at 162).  Finally, Plaintiff contests the application of *Sandwich Isles* to this case, on the basis that the relief sought here differs from the relief sought in that case.  *Id.* at 34.

### A.  Tucker Act Displacement

Defendant is correct: the Communications Act of 1934 displaces Tucker Act jurisdiction over this case.  Under the Tucker Act, this Court generally has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  However, the Court lacks jurisdiction over money-mandating claims arising under a statute if "Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute." *Horne. v. Dep't of Agric.*, 569 U.S. 513, 527 (2013) (citing *Eastern Enters. v. Apfel*, 524 U.S. 498, 520

---

[5] Plaintiff devotes a significant portion of its briefing to an argument that the Secure Networks Act is money-mandating for purposes of Tucker Act jurisdiction. *See* Resp. at 12–17.  Defendant, however, does not contest that the Secure Networks Act is money-mandating; instead, challenges Tucker Act jurisdiction on other grounds. *See* Reply at 7–8 ("[R]egardless of whether the Secure Networks Act is money-mandating, jurisdiction over claims brought under that statute to challenge FCC orders lies *exclusively in the courts of appeals*." (emphasis in original)).

(1998) (plurality opinion)).  "To determine whether a statutory scheme displaces Tucker Act jurisdiction, a court must 'examin[e] the purpose of the [statute], the entirety of its text, and the structure of review that it establishes.'"  *Id.* (alterations in original) (citing *United States v. Fausto*, 484 U.S. 439, 444 (1988)).  A "precisely drawn" statute that "contains its own judicial remedies" displaces the Tucker Act.  *United States v. Bormes*, 568 U.S. 6, 12 (2012) (quoting *Hinck v. United States*, 550 U.S. 501, 506 (2007)).

Binding precedent establishes that Section 402(a) and Section 402(b) displace this Court's Tucker Act jurisdiction over FCC decisions.  *See Sandwich Isles*, 992 F.3d at 1363 ("[T]he Communication Act's comprehensive scheme for review displaces Tucker Act jurisdiction for FCC orders and decisions falling within 47 U.S.C. § 402(a)."); *Alpine PCS, Inc. v. United States*, 878 F.3d 1086, 1097–98 (Fed. Cir. 2018) (holding that Section 402(b) displaces Tucker Act jurisdiction); *Biltmore Forest*, 555 F.3d 1375, 1384 (Fed. Cir. 2009) ("[J]urisdiction conferred by § 402(b) is exclusive."); *Folden*, 379 F.3d at 1356 ("[T]he D.C. Circuit's jurisdiction pursuant to subsection 402(b) is also exclusive: subsections 402(a) and (b) comprise the entire statutory regime by which parties may obtain judicial review of Commission decisions.").  Thus, it is well-established that if an FCC decision is subject to Section 402(a) or (b), this Court lacks Tucker Act jurisdiction.

Defendant correctly argues that this Court's jurisdiction over the FCC's denial of Plaintiff's application for the Reimbursement Program was displaced because the FCC's denial is subject to Section 402(a).  *See* Mot. at 20–21.  Congress displaced Tucker Act jurisdiction over FCC orders under the Secure Networks Act via the Secure Networks Act's enforcement provision.  *See* 47

16

U.S.C. § 1606(a).  That law grants the FCC the power to enforce[6] the Secure Networks Act "in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the Communications Act of 1934 were incorporated into and made a part of this chapter."  *Id.*  In *Sandwich Isles*, Section 402(a) applied to the challenged FCC decision and displaced Tucker Act jurisdiction because the FCC had made a decision, pursuant to its Communications Act of 1934 authority, "regarding the amount of subsidies [plaintiff] could receive."  *Sandwich Isles*, 992 F.3d at 1364.  The same rule applies here because, under the Secure Networks Act's grant of "the same jurisdiction, powers, and duties" as the Communications Act of 1934, the FCC denied Plaintiff's application for funding from the Reimbursement Program.  47 U.S.C. § 1606; *see Sandwich Isles*, 992 F.3d at 1364.  As in *Sandwich Isles*, any challenge to the FCC's order must be brought in an appropriate court of appeals pursuant to Section 402(a).  *See* 47 U.S.C. § 402(a); *Sandwich Isles*, 992 F.3d at 1364.

Here, Count One of the Amended Complaint expressly challenges the FCC's order denying Plaintiff's application for Reimbursement Program funding, so Count One must be brought pursuant to Section 402(a).  *See Sandwich Isles*, 992 F.3d at 1364; Am. Compl. ¶¶ 62 ("The United States's denial of reimbursement to Plaintiff violated the Secure Networks Act"), 63 ("The United States violated 47 U.S.C. §§ 1603(a) and (d)(5)(A) by failing to 'make reasonable efforts to ensure that reimbursement funds are distributed equally among all applicants.'").  "[E]xclusive jurisdiction" over challenges brought pursuant to Section 402(a) belongs to "[t]he court of appeals (other than the United States Court of Appeals for the Federal Circuit)."  28 U.S.C. § 2342.  As this Court is not a "court of appeals (other than the United States Court of Appeals for the Federal

---

[6] The FCC cited Section 1606 when it denied Plaintiff's petition for reconsideration.  Mot. at 47 (Def. App. at A8).

17

Circuit),” this Court lacks subject matter jurisdiction to review challenges to FCC decisions made under the Secure Networks Act and cannot hear Plaintiff's Count One challenge to the FCC's decision. *See id.*; *Sandwich Isles*, 992 F.3d at 1363.

The Court also lacks jurisdiction over Count Two because Count Two merely recharacterizes a challenge to the FCC's denial order as a contract claim. In Count Two, Plaintiff alleges that the FCC formed a contract to reimburse Plaintiff because Plaintiff applied for the Reimbursement Program and removed equipment from its network in reliance upon alleged assurances that Plaintiff could be repaid. Am. Compl. ¶¶ 77, 79. Plaintiff seeks the same remedy for the alleged breach of contract in Count Two as for the alleged statutory violation in Count One: the payment of $273,971,425.71, plus interest. *Id.* ¶ 93. Defendant contends that the “true nature” of Plaintiff's contract-based claim in Count Two is also an appeal of the FCC's decision. Mot. at 22 (quoting *Sandwich Isles*, 992 F.3d at 1364). Plaintiff responds that the “courts of appeals have expressly rejected subject matter jurisdiction under the Hobbs Act to decide such claims.” Resp. at 35 (citing *Northpoint Tech., Ltd. v. Fed. Commc'n Comm'n*, 414 F.3d 61, 76 (D.C. Cir. 2005)). This Court agrees with Defendant that the true nature of Plaintiff's claim in Court Two is an appeal of the FCC's denial decision.

The Federal Circuit has instructed that Tucker Act jurisdiction is still displaced over challenges to FCC decisions even where those challenges are characterized as contract claims, rather than as direct challenges to agency action. *Sandwich Isles*, 992 F.3d at 1364. In *Sandwich Isles*, the Federal Circuit held that even though plaintiff had characterized a claim as a takings claim for purposes of Tucker Act jurisdiction, Section 402(a) displaced the Tucker Act as the “alleged takings claims challenge FCC actions and orders and thus are governed by subsection 402(a).” *Id.* The takings claim at issue was “based on [plaintiff's] disagreement with FCC

decisions regarding the amount of subsidies" that plaintiff received from the FCC. *Id.* Section 402(a) applied because the plaintiff could have presented its takings claim to the FCC (although plaintiff chose not to do so), the FCC could have granted or denied the remedy sought, and plaintiff could have appealed that decision to the court of appeals.[7] *Id.* at 1365. Similarly, challenges to FCC decisions subject to Section 402(b) are still subject to Tucker Act displacement if they are characterized as breach of contract claims. *Alpine PCS*, 878 F.3d at 1094–95. Here, Plaintiff's contract-based claim is based upon a dispute with the FCC about Plaintiff's entitlement to subsidies: Plaintiff argues it is entitled to more than $273 million, while the FCC says zero. Am. Compl. ¶ 54. The FCC could have granted the remedy of payment from the Reimbursement Program, and there is no indication that the FCC prevented Plaintiff from raising the contract-based claim. *See, e.g.*, Reply at 12–13. As Plaintiff seeks the same relief for the same dispute in its statutory and contract-based claims, the "true nature" of this contract-based claim is actually a challenge to the FCC's decision, over which this Court lacks jurisdiction. *Sandwich Isles*, 992 F.3d at 1362.

---

[7] Plaintiff argues that it could not have appealed a contract-based claim from the FCC to a court of appeals, so it could not seek judicial review of its contract claim in any other forum. *See* Resp. at 35 (citing *Northpoint*, 414 F.3d at 76). In *Northpoint*, the D.C. Circuit held that Tucker Act jurisdiction applied to an applicant's allegations that an FCC licensing decision violated "prior agreements or understandings with the FCC as to the end result of the development and testing of its technology." *Northpoint*, 414 F.3d at 69. The D.C. Circuit held that the violation of an agreement that existed separately from the licensing decision was a Tucker Act matter. *See id.* at 76 ("If Northpoint is contending here that the FCC violated an agreement with the company, that is a Tucker Act matter, see 28 U.S.C. § 1491, and not for review in this APA proceeding."). Plaintiff's citation to *Northpoint* is a red herring and of no moment here. Indeed, *Northpoint*, which is not binding in this Court, does not apply here because Plaintiff cites only the application process and statements related to the application process in support of its alleged contract— Plaintiff does not allege the existence of a contract separate from the application process. *See* Am. Compl. ¶¶ 61–67. In addition, binding precedent by the Federal Circuit, this Court's reviewing body, holds that Section 402 assigns breach of contract appeals arising out of FCC funding applications to the D.C. Circuit, and that Tucker Act jurisdiction is displaced over such claims. *Alpine PCS, Inc. v. United States*, 878 F.3d 1086, 1094–95 (Fed. Cir. 2018).

Although not binding, the Court notes that another judge on the Court of Federal Claims has similarly and persuasively concluded that Tucker Act jurisdiction is displaced over challenges to FCC decisions under the Secure Networks Act. *See SI Wireless*, 181 Fed. Cl. at 202. There, the Honorable Eric G. Bruggink ruled that the Secure Networks Act "was incorporated into an existing multi-layered statutory framework, anchored by the Communications Act of 1934." *Id.* at 204. *SI Wireless* reflects that Federal Circuit precedent concerning Tucker Act displacement over FCC decisions applies to the Secure Networks Act: "*Sandwich Isles* controls the outcome of this case." *Id.* at 207. *SI Wireless* also ruled that Tucker Act jurisdiction is displaced over statutory and contractual challenges to FCC decisions under the Secure Networks Act: "Congress has spoken regarding any challenge to the FCC's orders and actions under the [Secure Networks Act], and it has spoken conclusively and unambiguously." *Id.* at 211. The Court agrees here with the reasoning in *SI Wireless*. *See id.*

### B.  Plaintiff's Arguments Against Displacement

Plaintiff makes many attempts to distinguish *Sandwich Isles* and evade Congress's mandate clearly displacing this Court's Tucker Act jurisdiction over FCC decisions and orders. Each of those attempts fails.

The Supreme Court of the United States' (Supreme Court's) recent decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.* does not alter the displacement of Tucker Act jurisdiction over FCC decisions. *See* 606 U.S. 146 (2025). In *McLaughlin*, the Supreme Court held that "[t]he Hobbs Act does not preclude district courts in enforcement proceedings from independently assessing whether an agency's interpretation of the relevant statute is correct." *Id.* at 152. This means that a district court that has subject matter jurisdiction over an enforcement suit between two private parties is not bound by the FCC's interpretation of a statute in a previous

decision concerning unrelated parties. *Id.* at 162. Plaintiff cites *McLaughlin* for the proposition that the Court of Federal Claims has the power to review FCC orders in enforcement proceedings, but that is a misstatement of the Supreme Court's holding. *See* Resp. at 28. There was no dispute in *McLaughlin* that the district court had subject matter jurisdiction to hear the case because the plaintiff there brought its suit under a private right of action that gives jurisdiction to courts besides the federal courts of appeals. *See McLaughlin*, 606 U.S. at 149 (case brought under 47 U.S.C. § 227(b)(3)); *see also* 47 U.S.C. § 227(b)(3) ("A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State . . . an action based on a violation of this subsection."). Instead, the issue was whether, *given that the district court had subject matter jurisdiction*, the district court could perform "judicial review of the FCC's statutory interpretation." *McLaughlin*, 606 U.S. at 159. To the extent that *McLaughlin* applies to this case, its implication is only that *if this Court has subject matter jurisdiction*, the FCC's interpretation of statutes does not bind this Court. *See id.* Contrary to Plaintiff's arguments, *McLaughlin* has no bearing on this Court's subject matter jurisdiction to review FCC decisions. *See id.*

Similarly, the cases to which Plaintiff cites in its Notice of Supplemental Authority confirm, contrary to Plaintiff's argument, that *McLaughlin* only establishes that courts do not defer to the FCC's interpretation of statutes following *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). *See* Pl.'s Notice of Suppl. Authority at 2. Although two of the four cases Plaintiff cites state that *McLaughlin* interpreted the "jurisdiction" of district courts, those uses of the word "jurisdiction" are unrelated to the subject matter jurisdiction at issue in this case. *See Astro Cos. v. WestFax Inc.*, No. 1:23-cv-02328, 2026 WL 346180, at *1 (D. Colo. Feb. 9, 2026); *Loudermilk v. Maelys Cosms. USA, Inc.*, No. 1:24-cv-1866, 2025 WL 3625779, at *2 (N.D. Ga. Dec. 11, 2025).

21

Rather, the districts courts used the term "jurisdiction" to reference their power to interpret statutes without deference to FCC interpretations. *See Astro Cos.*, 2026 WL 346180, at *1; *Loudermilk*, 2025 WL 3625779, at *2. In all four cases, the district courts had subject matter jurisdiction because provisions within Title 47 created private rights of action. *See Astro Cos.*, 2026 WL 346180, at *1 (brought under 47[8] U.S.C. § 227(b)(1)(c)); *Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-cv-00343, 2026 WL 202930, at *1 (S.D. Tex. Jan. 26, 2026) (brought under 47 U.S.C. § 227(c)(5)); *Loudermilk*, 2025 WL 3625779, at *1 (brought under 47 U.S.C. § 227(c)); *TowerNorth Dev., LLC v. City of Geneva*, No. 22-C-4151, 2025 WL 2767029, at *2 (N.D. Ill. Sep. 29, 2025) (brought under 47 U.S.C. § 332(c)(7)(B)(i)–(iii)). None of the cited cases concern decisions that are committed by law to the FCC, nor did any of the cited cases directly challenge FCC decisions; rather, the cases challenged legal interpretations that the FCC had reached in other proceedings. *See* Pl.'s Notice of Suppl. Authority at 2. Here, in contrast, subject matter jurisdiction is in dispute because Plaintiff's Amended Complaint directly challenges an FCC decision, over which the law is clear that this Court lacks subject matter jurisdiction. *See* Am. Compl. ¶ 62; *Sandwich Isles*, 992 F.3d at 1362.

Plaintiff contends that *Sandwich Isles* does not govern the outcome of this case because the provision at issue there was not money-mandating, whereas the Secure Networks Act is money-mandating. Resp. at 33. However, the *Sandwich Isles* decision did not hinge or rely at all on whether the provision at issue was money-mandating—the Federal Circuit there did not consider that question; instead, like the present case, the Circuit's analysis centered entirely on Tucker Act

---

[8] *Astro Cos.* cites this provision as "Telephone Consumer Protection Act (TCPA), 42 U.S.C. § 227(b)(1)(c)." *Astro Cos.*, 2026 WL 346180, at *1. The citation to Title 42 appears to be a typographical error, as the Telephone Consumer Protection Act is codified in Title 47. *See* 47 U.S.C. § 227.

displacement. *Sandwich Isles*, 992 F.3d at 1361–62. Next, Plaintiff argues that *Sandwich Isles* is distinguishable because the plaintiff in that case had an ongoing relationship with the FCC and was likely to seek future funding, whereas here "Plaintiff is seeking a one-time payment of a specific amount of money that Plaintiff is owed." Resp. at 34. Plaintiff relies upon *Maine Community Health* for the proposition that Tucker Act jurisdiction is less likely to apply when a plaintiff seeks prospective relief or is likely to have an ongoing relationship with the government. *Id.* at 32–33 (citing *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 326–27 (2020)); *see Maine Cmty. Health Options*, 590 U.S. at 327 (finding Tucker Act jurisdiction more likely to apply when plaintiffs "seek specific sums already calculated, past due, and designed to compensate for completed labors"). However, merely one page earlier in the opinion, the Supreme Court references another well-established exception to Tucker Act jurisdiction. *Maine Cmty. Health Options*, 590 U.S. at 325 (quoting *Bormes*, 568 U.S. at 12). Tucker Act jurisdiction is "displaced" when "a law assertedly imposing monetary liability on the United States contains its own judicial remedies." *Id.* The Supreme Court held that Tucker Act jurisdiction applied in *Maine Community Health* because plaintiff "[l]ack[ed] other statutory paths to relief." *Id.* at 328. In contrast here, Congress has provided a "comprehensive statutory scheme governing orders of the FCC" under the Secure Networks Act, and Plaintiff's Amended Complaint directly implicates it. *Sandwich Isles*, 992 F.3d at 1362; Am. Compl. at 62 (claiming that FCC order on Reimbursement Program application "violated the Secure Networks Act"). Accordingly, Tucker Act jurisdiction is displaced here.

Plaintiff's references to the Telecommunications Act of 1996 fail to salvage its argument. Plaintiff quotes Section 601(c)(1) of the Telecommunications Act of 1996, which states: "This Act and the amendments made by this Act shall not be construed to modify, impair, or supersede

23

Federal, State, or local law unless expressly so provided in such Act or amendments." Resp. at 24 ("The Tucker Act long predates the Telecom[munications] Act [of 1996]. Congress clearly did not mean to withdraw the Tucker Act jurisdiction of the Court of Federal Claims.") (citing Telecommunications Act of 1996, Pub. L. No. 104-104, § 601(c)(1), 110 Stat. 56 (1996)). By its plain language, the quoted section of the Telecommunications Act of 1996 applied only to "[t]his Act and the amendments made by this Act," rather than to any other statutes or acts. Telecommunications Act of 1996, Pub. L. No. 104-104, § 601(c)(1). Plaintiff's argument is misplaced because the quoted provision applies to the Telecommunications Act of 1996, whereas the displacement at issue in this case concerns different statutes: the Communications Act of 1934 and the Hobbs Act. *See Sandwich Isles*, 992 F.3d at 1362 (citing the Communications Act and the Hobbs Act for displacement of Tucker Act jurisdiction).

Plaintiff further argues that the Communications Act of 1934 itself prevents the displacement of Tucker Act Jurisdiction. Resp. at 24–25 (citing 47 U.S.C. § 414); *see* 47 U.S.C. § 414 (Section 414) ("Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."). This Court disagrees. Indeed, courts have not read Section 414 so broadly that it would allow jurisdiction that could "tread directly on the very areas reserved to the FCC[.]" *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 989 (7th Cir. 2000). In addition, Section 414 preserves "remedies," but the Tucker Act provides jurisdiction, not a remedy. 47 U.S.C. § 414; *SI Wireless, LLC v. United States*, 181 Fed. Cl. at 208 ("The Tucker Act, however, does not itself create a remedy in the sense used by the savings clause of section 414."). The Tucker Act does not create any remedies because "in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that

24

creates the right to money damages." *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc)). Thus, the Tucker Act does not create an applicable remedy for Section 414 to preserve, and Plaintiff fails to identify any other remedy.

Finally, the Federal Circuit's decision in *Ligado Networks* does not affect Tucker Act displacement in this case because the plaintiff there did not challenge FCC action. *Ligado Networks LLC v. United States*, No. 25-1792, 2026 WL 653982, at *3 (Fed. Cir. Mar. 9, 2026). In that case, the FCC granted plaintiff a license to use a particular wireless frequency but "made the grant of authority conditional on [plaintiff's] meeting various conditions, which included certain specified coordination with non-FCC federal agencies." *Id.* at *1. When those agencies allegedly failed to coordinate, plaintiff sued in the Court of Federal Claims, on the theory that federal agencies—but not the FCC—had seized a property interest that plaintiff held in the wireless license. *Id.* at *2. Tucker Act jurisdiction was not displaced because the Federal Circuit did "not see anything in [plaintiff's] takings claim that depends on a challenge to a Commission action." *Id.* at *3. In contrast, here, Plaintiff challenges FCC action—the denial of funding under the Secure Networks Act. Am. Compl. ¶ 53. As Plaintiff challenges FCC action, rather than the actions of other agencies which impair privileges granted by the FCC, *Ligado Networks* cannot save its case. *See Ligado Networks*, 2026 WL 653982, at *3.

Accordingly for the reasons set forth above, this Court lacks subject matter jurisdiction over each count of Plaintiff's Amended Complaint. Pursuant to Rules 12(b)(1) and 12(h)(3), Plaintiff's Amended Complaint is dismissed.

## II.    Exhaustion of Administrative Remedies

Defendant asserts that this Court additionally lacks jurisdiction because Plaintiff failed to exhaust mandatory administrative remedies.  Mot. at 26.  Plaintiff responds that the exhaustion requirement does not apply because it has sued under the Tucker Act, rather than under the judicial review provisions provided by Section 402(a).  Resp. at 29–30.  Here, Plaintiff has failed to meet the exhaustion requirement, so, even if the Tucker Act were not displaced, this Court would nevertheless lack jurisdiction over Plaintiff's case.

In support of its argument, Defendant contends that Plaintiff has failed to satisfy the exhaustion requirement because Plaintiff did not "wait for the agency to complete its review." Mot. at 26.  Defendant is correct.  A statute permitting the FCC to delegate decisions to bureaus within the FCC states that "[t]he filing of an application for review" with the full Commission is a "condition precedent to judicial review."  47 U.S.C. § 155(c)(7) ("The filing of an application for review under this subsection shall be a condition precedent to judicial review of any order, decision, report, or action made or taken pursuant to a delegation under [the provision enabling delegation].").  This statute requires "resolution by the full Commission," rather than just the filing of an application for review, before a Plaintiff seeks judicial review.  *Int'l Telecard Ass'n v. FCC*, 166 F.3d 387, 388 (D.C. Cir 1999) ("Congress did not intend that the court review a staff decision that has not been adopted by the Commission itself." (quoting *Richman Bros. Recs., Inc. v. FCC*, 124 F.3d 1302, 1304 (D.C. Cir. 1997)).  In addition, FCC regulations copy the statutory language to require "[t]he filing of an application for review" with the full Commission before a petitioner can seek judicial review of an FCC decision made pursuant to delegated authority.  47 C.F.R. § 1.115(k) ("The filing of an application for review shall be a condition precedent to judicial review of any action taken pursuant to delegated authority."); *see also Johnson v. FCC*, No. 1:21-

cv-2050, 2022 WL 17262173, at *4 (D.D.C. Nov. 29, 2022) (dismissing claim for lack of jurisdiction under both 47 U.S.C. § 155(c)(7) and 47 C.F.R. § 1.115(k) when Plaintiff did not wait for full Commission's decision).  As such, Plaintiff had to wait for "resolution by the full Commission" before seeking judicial review.  *Int'l Telecard*, 166 F.3d at 388.  Plaintiff failed to wait for the full Commission's decision in this case.  *See* OA Tr. at 6:9 (confirming that the full Commission had not ruled upon Plaintiff's application for review at the time of oral argument).  As Plaintiff has failed to exhaust mandatory administrative remedies, this Court lacks jurisdiction.

Plaintiff also argues that the exhaustion requirement does not apply when it sues under the Tucker Act rather than the judicial review provisions set forth in statute.  Resp. at 29.  The Federal Circuit has confirmed that exhaustion requirements still apply when a plaintiff attempts to evade mandatory review procedures by invoking Tucker Act jurisdiction.  *See St. Bernard Par. Gov't v. United States*, 916 F.3d 987, 996 (Fed. Cir. 2019).  In *St. Bernard Parish*, as here, plaintiff sought to appeal an agency decision to the Court of Federal Claims by asserting Tucker Act jurisdiction, even though Congress had specified "administrative review procedures, followed by judicial review in a district court," for challenges to the agency decision at issue.  *Id.*  Plaintiff still had to comply with the exhaustion requirement, even though it sought a different venue for appeal than the exhaustion requirement provided.  *Id.*  Here, then, Plaintiff must still follow the FCC's exhaustion requirements, even though Plaintiff seeks to avoid the jurisdictional rules that apply to its challenge.  *See id.*

### III.    Rule 12(b)(6) Motion

Even assuming *arguendo* that the Court had jurisdiction over Plaintiff's Amended Complaint (which, it does not), the Court would still be required to dismiss Plaintiff's Amended Complaint for failure to state a claim for relief pursuant to Rule 12(b)(6).

27

Defendant's Motion to Dismiss challenges both Counts One and Two for failure to state a claim. Defendant challenges Count One for failure to state a claim because, Defendant asserts, Plaintiff does not meet the requirements to receive funding from the Reimbursement Program. To qualify for the Reimbursement Program under the Secure Networks Act, Plaintiff must be a "provider of advanced communications service." *See* 47 U.S.C. § 1608(10). Defendant argues, correctly, that the Reimbursement Program limits the term "provider" to entities that actively provide service, and that an entity that discontinued service before the enactment of the Secure Networks Act, like Plaintiff, is not a "provider." As Plaintiff is not a "provider," it is ineligible to receive funding from the Reimbursement Program.

Defendant challenges Count Two for failure to state a claim because, Defendant asserts, Plaintiff does not plausibly plead a contract between itself and the United States. Plaintiff argues that the Secure Networks Act, its enabling regulations, the Reimbursement Program application form, and statements by FCC officials created a contractual offer for reimbursement. However, Plaintiff cannot identify the required unambiguous intent to make a contractual offer in any one of its identified authorities or in the authorities taken as a whole. Plaintiff fails to plead the existence a contract with the United States for reimbursement because the United States never made an offer to enter into a binding contract.

As described further below, Count One and Count Two each fail to state a claim for relief and accordingly the Court grants Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) as an alternative ground for dismissal.

## A. **Violation of Secure Networks Act**

Defendant argues that even if the Court had jurisdiction, Count One must be dismissed for failure to state a claim. Mot. at 27. Defendant argues that participation in the Reimbursement

28

Program is limited to "providers of advanced communications service," and that Plaintiff does not qualify as such a provider. *Id.* (citing 47 U.S.C. § 1603(a)). Defendant relies upon the use of the present tense in the statutory definition of "provider of advanced communications service" to exclude applicants, including Plaintiff, that no longer provide communications service. *Id.* at 28 (citing 47 U.S.C. § 1608(10)(A)).

Plaintiff responds that it is a provider because "[a]t the time Plaintiff filed its Form 5640, Plaintiff continued to pay for tower leases, maintain its infrastructure, and preserve[] its operational capabilities." Resp. at 38. Plaintiff argues that "[t]here are no provisions in the Secure Networks Act that support the Government's assertion that the statute required Plaintiff's network to be fully operational at the time Plaintiff submitted its claim for reimbursement." *Id.* at 38–39.

To determine whether "provider" in the Secure Networks Act includes entities that once provided service but no longer do so, the Court begins with the statutory text. *See Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 457 (2022) ("As always, we begin with the text."). "If the statutory language is plain, [the Court] must enforce it according to its terms." *King v. Burwell*, 576 U.S. 473, 486 (2015). When considering whether the language is plain, "[the Court] must read the words in their context and with a view to their place in the overall statutory scheme." *Id.* (internal quotation marks and citation omitted); *see also West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 721 (2022). The Court is not bound by an agency's interpretation of a statute, "but instead must determine the meaning of the law under ordinary principles of statutory interpretation." *McLaughlin*, 606 U.S. at 155; *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority.").

Only a "provider of advanced communications service" is eligible for the Reimbursement Program. 47 U.S.C. § 1603(b). The Secure Networks Act defines a "provider of advanced communications service" as "a person who **provides** advanced communications service to United States customers." *Id.* § 1608(10)(A) (emphasis added). This definition uses the present tense for "provides," and the present tense usually excludes the past. *See* 1 U.S.C. § 1 (Dictionary Act) ("In determining the meaning of any Act of Congress, unless the context indicates otherwise . . . words used in the present tense include the future as well as the present."); *see also Carr v. United States*, 560 U.S. 438, 448 (2010) ("[T]he Dictionary Act instructs that the present tense generally does not include the past. Accordingly, a statute that regulates a person who 'travels' is not readily understood to encompass a person whose only travel occurred before the statute took effect."). Plaintiff counters that "[t]he Supreme Court construes statutory definitions differently than terms describing acts or conduct." Resp. at 40. To the contrary, the Supreme Court still applies the principle that the present and past tenses have different meanings when it interprets statutory definitions. *See, e.g., Stanley v. City of Sanford*, 606 U.S. 46, 52 (2025) (holding that present-tense verb in a statutory definition excludes the past tense); *Gundy v. United States*, 588 U.S. 128, 142–43 (2019) (holding that past-tense verb in a statutory definition indicated retroactive application). Accordingly, the use of the present tense in the Secure Networks Act's definition of "provider of advanced communications service" excludes anyone who only provided service in the past. *See* 47 U.S.C. § 1608(10). Such entities are ineligible for the Reimbursement Program. *See* 47 U.S.C. § 1603(b).

Plaintiff does not allege in its Amended Complaint that it operated a network at the time that it applied to the Reimbursement Program or in the several years before Congress passed the Secure Networks Act. *See* Am. Compl. ¶¶ 24 ("PTA-FLA **provided** advanced communications

30

service" (emphasis added)), 44 (acknowledging that Plaintiff lacked "an operational network at the time it submitted its application"), 47 ("Plaintiff had only temporarily taken its network offline in the past, not as a permanent cessation of service."). As such, Plaintiff failed to plead that it qualified as a provider eligible for the Reimbursement Program, and it has failed to state a claim for relief under the Secure Networks Act.

Plaintiff cannot qualify as a provider through its affiliates' provision of service. Plaintiff argues that because its customers include the customers of its affiliates, and Plaintiff's affiliates "continued to provide advanced communications service to customers without interruption," therefore Plaintiff has continuously provided service to its affiliates. Resp. at 39–40; *see* 47 U.S.C. § 1608(6) ("The term 'customers' means, with respect to a provider of advanced communications service— (A) the customers of such provider; and (B) the customers of any affiliate . . . of such provider."). In short, Plaintiff argues that it can take credit not only for the customers of its affiliates, but also for the affiliates' provision of service. *See* Resp. at 39–40. However, Plaintiff's interpretation does not accord with the statutory text. The statutory definition requires that a "provider of advanced communications service" "provides advanced communications service to United States customers"—a "provider of advanced communications service" must "provide" service in addition to having "United States customers." *See* 47 U.S.C. § 1608(10). Congress explicitly wrote into the statute that "customers" would include "the customers of any affiliate . . . of such provider" but chose not to extend the credit for affiliate service to the requirement that providers actually "provide" service. *See* 47 U.S.C. § 1608(6), (10). As such, by its plain text, the statute does not allow Plaintiff to count its affiliates' provision of service as its own; thus, Plaintiff fails to plead in its Amended Complaint that it qualifies as a provider of advanced communications

31

service.  *See, e.g.,* Am. Compl. ¶ 24 ("PTA-FLA **provided** advanced communications service" (emphasis added)).

Finally, Plaintiff's purpose argument cannot override the plain language of the Secure Networks Act.  Plaintiff argues that "[t]o interpret the Secure Networks Act as the Government alleges makes no sense because it would fail to prevent the threat to national security caused by equipment in providers' networks prior to the enactment of the statute."  Resp. at 40.  However, where statutory text and structure are clear, the Court will not engage in a purposivist analysis that undermines the statute.  *See Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) ("In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself.  Where, as here, that examination yields a clear answer, judges must stop." (internal citations omitted)).  In this case, the plain text of the statute is unambiguous, so the Court cannot consider a purpose-based argument that undermines the unambiguous text of the statute.  *See id.*  Congress, not this Court, decides how to "prevent the threat to national security" that motivated the Secure Networks Act and the Reimbursement Program; this Court declines Plaintiff's invitation to engage in judicial engraftment of the statute. *See* Resp. at 40.

### B.  Existence of Contract

Defendant challenges Plaintiff's ability to state a claim for relief in Count Two on the ground that the Amended Complaint does not plead the existence of a contract with the United States.  Mot. at 29.  If no contract exists, then Plaintiff cannot establish a claim for breach of contract.  *See San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989) ("To recover for breach of contract, a party must allege and establish . . . a valid contract between the parties.").

32

The formation of a contract with the federal government requires four elements: "(1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States." *Boyd v. United States*, 134 F.4th 1348, 1352 (Fed. Cir. 2025) (quoting *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003)). "These elements apply to both express and implied-in-fact contracts." *Id.* (citing *Am. Bankers Ass'n*, 932 F.3d at 1381). An offer requires "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Anderson*, 344 F.3d at 1353 (quoting Restatement (Second) of Contracts § 24 (A.L.I. 1981)). Acceptance is "a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." *Id.* at 1355 (quoting Restatement § 50(1)). In addition, mutual assent for an implied-in-fact contract requires authority to contract: "[t]he government representative whose conduct is relied upon must have actual authority to bind the government in contract." *Portland Mint v. United States*, 102 F.4th 1371, 1383 (Fed. Cir. 2024) (alteration in original) (quoting *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed. Cir. 1998)).

According to Defendant, none of the many statutes, regulations, or statements cited in Plaintiff's Amended Complaint reflect an offer to enter into a contract. Mot. at 29–36. In response, Plaintiff argues that the Amended Complaint pleads an offer created by the Secure Networks Act and its enabling regulations. Resp. at 46–47. Plaintiff also argues that the FCC made an offer through public statements of senior officials and the language of reimbursement application forms. *Id.* As explained below, the Court holds that the Amended Complaint fails to plead the existence of a contract in Count Two.

### 1. Secure Networks Act and Regulations

There is a "well-established presumption" that statutes do not constitute an offer to enter into a contract: "absent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" *Nat'l R.R. Passenger Corp. v. Atchison, Topeka and Santa Fe Ry. Co.*, 470 U.S. 451, 465–66 (1985) (quoting *Dodge v. Bd. Of Educ.*, 302 U.S. 74, 79 (1937)). Statutes and regulations that do not "provide for the execution of a written contract on behalf of the United States" do not bind the government to a contract if they instead create a "regulatory system." *Am. Bankers Ass'n*, 932 F.3d at 1382 (citing *Nat'l R.R.*, 470 U.S. at 467). A statute does not create a contract if it does not "reflect a bargained-for quid pro quo between two parties." *Id.* at 1383. Rather, a statute only constitutes a contractual offer if it "demonstrate[s] the government's clear intent to confer vested contractual rights." *Id.*

Plaintiff alleges that the Secure Networks Act and the enabling regulations that the FCC has issued for the Reimbursement Program constitute an offer to enter a contract for reimbursement. Am. Compl. ¶¶ 31, 42. In support of its contention, Plaintiff argues that the Secure Networks Act and regulations contain a "reimbursement mandate," which creates a "quid-pro-quo offer and intent to contract." Resp. at 46–47. In response, Defendant argues that the Secure Networks Act and associated FCC regulations do not overcome the presumption that legislation does not constitute a contractual offer. Mot. at 32.

The Secure Networks Act does not manifest an offer to enter into a contract with the United States. Like the statute at issue in *American Bankers Ass'n v. United States*, the Secure Networks Act sets up a regulatory system and contains no bargained-for quid pro quo. *See Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1382–84 (Fed. Cir. 2019); Secure Networks Act. There,

34

the Federal Reserve Act set up a "regulatory system" because it assigned duties to regulated entities and created obligations for federal agencies but did not "speak of a contract" or express the "actual intent" for the United States to bind itself. *Id.* at 1382 (quoting *Nat'l R.R.*, 470 U.S. at 466–67). The Federal Circuit held that the statute's provision of "benefits to those who comply with its conditions," was insufficient to establish a contractual offer. *Id.* at 1383 (quoting *Wis. & Mich. Ry. Co. v. Powers*, 191 U.S. 379, 387 (1903)). Without additional indicia of a contract, the statute lacked the "clear intent to confer vested contractual rights" that would separate a regulatory statute from one that creates a contract. *Id.*

Similarly, the Secure Networks Act, in creating the Reimbursement Program, ordered an agency (the FCC) to confer benefits upon regulated parties if they met a series of qualifications. *See* 47 U.S.C. § 1603; *see also Chattler v. United States*, 632 F.3d 1324, 1331 (Fed. Cir. 2011) ("Where rights and obligations are prescribed by statute and regulations rather than determined through the mechanics of a bilateral exchange, there is no contract in the usual sense of that word." (quoting *Clawson v. United States*, 24 Cl. Ct. 366, 370 (1991))). For example, the FCC must "develop an application process and related forms and materials," 47 U.S.C.§ 1603(d)(2)(A), and the FCC must "approve or deny an application for a reimbursement," *id.* § 1603(d)(3)(A)(i). The FCC "may not make a reimbursement" until it has taken those steps and determined that an applicant is eligible for the Reimbursement Program. *Id.* § 1603(b). At most, the statutory language might provide "benefits to those who comply with its conditions," but there is no indication beyond the creation of a regulatory system and the provision of benefits that Congress intended to bind the United States to a contract through the Secure Networks Act. *See Am. Bankers Ass'n*, 932 F.3d at 1383 (quoting *Wis. & Mich. Ry. Co.*, 191 U.S. at 387). As such, the Secure Networks Act lacks the "clear intent" needed to constitute a contractual offer. *See id.*

35

The Federal Circuit applies the same analysis to determine whether a federal regulation manifests a contractual offer as for a federal statute. *See Hanlin v. United States*, 316 F.3d 1325, 1329–30 (Fed. Cir. 2003). In *Hanlin v. United States*, an attorney argued that a statute directing the Department of Veterans Affairs (DVA) to pay attorneys according to a particular procedure and the enabling regulations for that statute constituted a contractual offer to attorneys. *Id.* at 1329. The enabling regulation used mandatory language: the DVA "will" pay the requested money if three conditions are met. *Id.* (quoting 38 C.F.R. § 20.609(h) (2002)) (emphasis omitted). This enabling regulation did not reflect a contractual offer because it "simply acknowledge[d] the statute and instruct[ed] DVA officials to pay such fees." *Id.* at 1329–30. The Federal Circuit distinguished between a regulation that creates an agency's "authority and obligation to act" and a contract. *Id.* at 1329. Crucially, the Federal Circuit held that the DVA's own disclaimer of a contractual offer in regulatory history served as evidence that the DVA never made such an offer. *Id.* at 1330.

Similarly, the FCC regulations for the Reimbursement Program do not evince the Defendant's intent to make a contractual offer because the regulations expressly disclaim a binding commitment until the FCC has reviewed and granted an application. *See* Resp. at 47. PTA-FLA quotes a line in the enabling regulations, which states that applicants to the Reimbursement Program "may rely upon the predetermined estimated costs identified in the Catalog of Expenses Eligible for Reimbursement." Am. Compl. ¶ 40 (citing 47 C.F.R. § 1.50004(c)(1)(i)). However, the Catalog of Expenses, which Plaintiff attaches as an exhibit to its Amended Complaint, explicitly warns that reliance upon the Catalog of Expenses in applying does not create an obligation on behalf of the United States: "[t]he cost estimates identified in this Catalog do not guarantee a funding allocation or disbursement of funds from the Reimbursement Program." Am.

36

Compl. at 122 (identified as Attachment B, FCC Final Catalog of Eligible Expenses and Estimated Costs).   The disclaimer in this sentence resembles the agency's disclaimer of a promissory relationship in *Hanlin*.  *See Hanlin*, 316 F.3d at 1329–30.  Similarly, the disclaimer in the Catalog of Expenses indicates that the FCC did not intend to be bound in a contractual relationship with any applicant who relied upon the Catalog of Expenses.  *See id*; Am. Compl. at 122.  As such, the FCC's regulations enabling the Secure Networks Act did not constitute an offer to enter into a contract with the United States, just as the Secure Networks Act itself did not constitute a contractual offer.

### 2.  Other Communications

Plaintiff alleges that other communications—the Reimbursement Program application form and public statements by FCC officials—combined with the statute and regulations to form a contractual offer.  Resp. at 47.  Specifically, Plaintiff's Amended Complaint references the "terms and conditions set forth in the claim form, FCC Form 5640" and several statements made by FCC officials during a September 27, 2021, webinar.  Am. Compl. ¶¶ 31, 34.  The combination of these communications, Plaintiff argues, is sufficient to establish the offer for a contract.  Resp. at 47.

Defendant counters that none of these communications, either individually or in combination, demonstrate a contractual offer.  Reply at 25.  Instead, Defendant argues, "all the 'evidence' that PTA-FLA musters demonstrates that the Reimbursement Program established an application process in which entities like PTA-FLA would petition the FCC to receive an allocation of Federal funding."  *Id.*

i.    Form 5640 Reimbursement Application

The Form 5640 reimbursement application does not manifest the intent to enter into a contract: the FCC created an application process for the Reimbursement Program and did not evince the intent to make a contractual offer.  In *Chattler v. United States*, the Federal Circuit held that an application form and public statements did not constitute a contractual offer.  *See Chattler v. United States*, 632 F.3d 1324, 1330 (Fed. Cir. 2011).  There, the plaintiff completed a form requesting expedited passport processing, but the State Department failed to meet the expedited processing timeline, so plaintiff sued and alleged a breach of contract for lack of expedited processing.  *Id.* at 1326–27.  The Federal Circuit held that the form that the plaintiff used to request expedited passport processing did not constitute contractual offer because the form characterized itself as a "request" and the expedited processing only applied if the government determined the applicant was eligible.  *Id.* at 1331.  In short, the form was an application for a regulatory program, which is not a contractual offer.  *Id.*  Public statements on the State Department's website concerning processing timelines also did not constitute offers to contract because the statements only described themselves as defining what an applicant "can expect."  *Id.* at 1333 (emphasis omitted).  The lack of a concrete promise or offer meant that the statements were not offers to contract: "[t]hese statements use language of intention or prediction, not obligation, and thus do not constitute offers to contract."  *Id.*

Here, Plaintiff's submission of Form 5640 does not constitute a contractual offer because, like the application form at issue in *Chattler*, it constitutes a mere request and the Form's plain text disclaims any intent to enter into a binding contract.  *See Chattler*, 632 F.3d at 1331.  Just as the application form at issue in *Chattler* characterized itself as a way to "request" a service, *id.*, Form 5640 identifies itself as a "request for funding allocation," rather than an offer that can be

38

immediately accepted, Am. Compl. at 109 (Attachment A, Form 5640).  In addition, Form 5640 closely resembles the application form in *Chattler* because each form conditioned the requested government service on an applicant's eligibility for a program, which the agency only evaluates after the applicant submits the form.  The application form in *Chattler* did not create a contract because the agency could still "decline" the request after the submission of the form, according to the form's plain language.  *Chattler*, 632 F.3d at 1331.  Similarly, Form 5640 envisions that the FCC must evaluate the application before the parties are bound[9] to any agreement because Form 5640 uses contingent language: an applicant only needs to follow the requirements "[i]f the application is approved."  Am. Compl. at 109 (Attachment A, Form 5640).  Form 5640 thus does not manifest an offer by the United States to enter a contract because "an applicant's assent to the 'offer' would not necessarily conclude the bargain."  *Chattler*, 632 F.3d at 1331.

ii.    Webinar Statements

Plaintiff finally claims that several statements made by FCC officials during a September 27, 2021, webinar reflected an intent to enter into a contract.  Am. Compl. ¶ 34; Resp. at 47.  Defendant responds that none of these statements reflect an intent to form a contract.[10]  Mot. at 35; OA Tr. at 44:25–45:1 ("[W]hoever heard of a contract by webinar?").  In particular, Plaintiff

---

[9] For evidence that the submission of an application form reflects the mutual intent to contract, Plaintiff argues that it had to warrant (by signing Form 5640) that it will "not 'purchase, rent, lease, or otherwise obtain'" covered telecommunications equipment, and that this promise reflects a mutual intent to contract.  Resp. at 47 & n.11.  However, Form 5640 plainly states that these requirements only apply "[i]f the application is approved."  Am. Compl. at 109 (Attachment A, Form 5640).

[10] Defendant argues that neither of the referenced FCC officials had actual authority to bind the United States to a contract.  Mot. at 36.  As the Court holds that neither official's statements could constitute a contractual offer, the Court need not reach the question of whether the Amended Complaint pleads facts that could demonstrate actual authority.

alleges that the Acting Associate Chief of the Wireline Competition Bureau "stated that reimbursement would be provided for expenses incurred to remove and replace equipment even though the service provider had not actually paid for the replacement equipment because the FCC recognized that small companies lacked the resources to float such expenses while waiting to be reimbursed." Am. Compl. ¶ 34. In addition, Plaintiff alleges that a Special Counsel to the FCC Chairman said that "the time is now to remove this equipment from our networks."[11] Am. Compl. ¶ 35.

Although the FCC officials urged applicants to move quickly, there was no indication that applications were "anything more than that—applications." *Baker v. United States*, 50 Fed. Cl. 483, 495 (2001). None of these alleged statements reflect "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Anderson*, 344 F.3d at 1353 (quoting Restatement § 24). Instead, the facts in the Amended Complaint reflect that the FCC officials encouraged prompt participation and compliance with the application process, and the continued possibility that the FCC could "decline" an application meant that an offer in response to the webinar "would not

---

[11] To the extent that Plaintiff seeks to bring a claim based on detrimental reliance or promissory estoppel, rather than a breach of contract claim, such a claim would be dismissed for lack of jurisdiction. *See Parra v. United States*, No. 25-431, 2025 WL 1792979, at *7 (Fed. Cl. June 27, 2025) ("[Plaintiff's] claim is more properly understood as a claim for detrimental reliance under an implied-in-law contract, over which this Court lacks jurisdiction."). Plaintiff claims that it "relied on" the statements of FCC officials, "took action at significant expense," and that this cost "was not only foreseeable, but it was encouraged." Am. Compl. ¶ 89. As detrimental reliance and promissory estoppel are implied-in-law theories of contracts or quasi-contracts, the Court of Federal Claims lacks jurisdiction over them. *Parra*, 2025 WL 1792979, at *6; *see Piotrowski v. United States*, 722 F. App'x 982, 985 n.1 (Fed. Cir. 2018) (citing *Sinclair v. United States*, 56 Fed. Cl. 270, 281 (2003)) (noting that "it is well established that the Court of Federal Claims does not have jurisdiction over" promissory estoppel claims); *see also Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996) ("We have repeatedly held that [Tucker Act] jurisdiction extends only to contracts either express or implied in fact, and not to claims on contracts implied in law.).

necessarily conclude the bargain." *Chattler*, 632 F.3d at 1331; *see Anderson*, 344 F.3d at 1353 ("As a threshold condition for contract formation, there must be an objective manifestation of voluntary, mutual assent.").

As none of the authorities cited by Plaintiff evince any intent to make an offer to contract on behalf of the United States, the authorities (together and individually) do not suffice to plead the existence of a contract between Plaintiff and the United States. *See Boyd*, 134 F.4th at 1352. Without the existence of a valid contract, Plaintiff cannot state a claim for breach of contract in Count Two. *See San Carlos Irrigation & Drainage Dist.*, 877 F.2d at 959.

### CONCLUSION

Accordingly, for the reasons stated above, the Court **GRANTS** Defendant's Corrected Motion to Dismiss (ECF No. 10). The Court **DISMISSES** Plaintiff's Amended Complaint (ECF No. 6) for lack of subject matter jurisdiction pursuant to Rules 12(b)(1) and 12(h)(3) and alternatively for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). The Clerk of Court is **DIRECTED** to enter Judgment accordingly and mark this case as closed.

IT IS SO ORDERED.



*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

July 22, 2026
Washington, D.C.